**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NAKISA J. LEWIS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-5545** |
| | : | |
| **DETECTIVE RALPH D. LEWIS, CITY OF PHILADELPHIA, PHILADELPHIA DISTRICT ATTORNEY'S OFFICE** | : | |

# MEMORANDUM

**KEARNEY, J.** **September 29, 2026**

A separated wife claims her police detective husband reported her to the District Attorney for allegedly stealing his 1967 Mustang which she later proved to own under a property settlement agreement. The police department arrested the wife and the District Attorney unsuccessfully prosecuted the theft. The wife succeeded in expunging the charge. The wife now pro se sues her husband (detective), his employer City, the police department where the husband worked, and the prosecutors who brought the theft case as reported by her husband. The wife concedes she cannot separately sue the Police Department or proceed under the Fourteenth Amendment. She then concludes without facts the other state actors are liable for violating her civil rights and under a series of Pennsylvania tort claims. She concedes she offers only conclusions and would like leave to amend. We dismiss her pro se conclusory claims. We dismiss her withdrawn claims against the Police Department and under the Fourteenth Amendment with prejudice. We dismiss her remaining claims without prejudice to timely amend with facts presented in good faith which would allow us to plausibly infer a basis for her claims against her husband, his employer City under a municipal liability theory, and against the prosecutors.

## I. Alleged pro se facts

Philadelphia Detective Ralph Lewis and his wife Nakisha Lewis signed a property settlement agreement in 2019 granting Mrs. Lewis ownership of a 1967 Mustang.[1] Detective Lewis nevertheless referred Mrs. Lewis in March 2023 to the Philadelphia District Attorney's Office for stealing his 1967 Mustang.[2]

The Philadelphia Police arrested Mrs. Lewis for theft of the Mustang on March 30, 2023.[3] The prosecution apparently proceeded. Mrs. Lewis suffered emotional distress, trauma, and related medical conditions as a result.[4] A state court acquitted Mrs. Lewis of these charges in October 2024.[5] A state court at some point expunged the charges.[6] A family court reaffirmed Mrs. Lewis's ownership of the Mustang.[7]

## II. Analysis

Mrs. Lewis now sues Detective Lewis, the City, its Police Department, and its District Attorney's Office alleging the arrest and unsuccessful prosecution violated her civil rights under the Fourth and Fourteenth Amendments.[8] She also alleges Detective Lewis, the City, its Police Department, and the District Attorney committed an abuse of power by persons acting under the color of state law, civil conspiracy/collusion to deprive Mrs. Lewis's civil rights, malicious prosecution, and intentional infliction of emotional distress.[9] She alleges no elements of an offense.

The City (along with its Police Department) move to dismiss Mrs. Lewis's claims.[10] The City argues Mrs. Lewis did not plead the City's liability.[11] Mrs. Lewis counters arguing her bare-bones pro se claims against the City are plausible, not based upon respondeat superior, and immunity does not bar her state law claims.[12] Mrs. Lewis concedes she cannot sue the Police Department separate from the City.[13]

The District Attorney moves to dismiss arguing Mrs. Lewis does not plead how her claims involve the District Attorney.[14] The District Attorney also argues Mrs. Lewis is unable to bring civil actions under section 1983 because she does not sufficiently plead claims relating to a civil rights claim and the District Attorney is also protected as a government entity.[15] The District Attorney moves to dismiss claims under the Pennsylvania Tort Claims Act.[16] Mrs. Lewis counters the District Attorney's "unique status and functions" do not allow for dismissal.[17] Mrs. Lewis further counters the District Attorney did not address her civil rights conspiracy claim or acknowledge an exception to prosecutorial immunity.[18] Mrs. Lewis also counters her separate Pennsylvania state law claims should not impact her federal claims.[19] Mrs. Lewis clarifies she does not believe in an automatic imputation of malicious prosecution on the District Attorney from Detective Lewis's behavior but asks for the chance to plead facts to develop this possibility.[20]

Detective Lewis separately moves to dismiss.[21] He argues Mrs. Lewis does not allege claims against him acting under color of state law as necessary for a civil rights claim.[22] He also argues Mrs. Lewis did not plead a malicious prosecution claim, a Fourth Amendment claim, a deprivation under the Fourteenth Amendment, a section 1983 conspiracy claim, or a claim under the official-capacity theory.[23] Detective Lewis further argues Mrs. Lewis did not sufficiently plead Pennsylvania claims for malicious prosecution and intentional infliction of emotional distress.[24] Mrs. Lewis counters she pleaded her civil rights claims but would like the opportunity to amend.[25]

We dismiss without prejudice Mrs. Lewis's claims against the City and the District Attorney for abuse of power by persons acting under color of state law, civil conspiracy/collusion to deprive Mrs. Lewis's civil rights, malicious prosecution, and intentional infliction of emotional distress. We also dismiss Mrs. Lewis's claims against the City and the District Attorney under the Fourth and Fourteenth Amendment. We also dismiss Mrs. Lewis's claims against Detective Lewis

for abuse of power by persons acting under color of state law, civil conspiracy/collusion to deprive Mrs. Lewis's civil rights, malicious prosecution, and intentional infliction of emotional distress along with all Fourth Amendment claims. Mrs. Lewis may timely amend to plead facts allowing us to infer a plausible basis for these claims against the City, the District Attorney, and Detective Lewis. We dismiss with prejudice Mrs. Lewis's claims against the Police Department and Mrs. Lewis's Fourteenth Amendment claim against Detective Lewis.

**A. We dismiss Mrs. Lewis's claims against the Philadelphia Police Department.**

The City of Philadelphia and Mrs. Lewis agree Mrs. Lewis cannot sue the Philadelphia Police Department and it should be dismissed.[26] We agree and dismiss the Philadelphia Police Department with prejudice.

**B. We dismiss Mrs. Lewis's claims against the City and the District Attorney under the Pennsylvania Tort Claims Act.**

Mrs. Lewis pleads the City and the District Attorney's actions under state law constituted an abuse of power, civil conspiracy/collusion, malicious prosecution, and intentional infliction of emotional distress.[27] The City and the District Attorney argue the Pennsylvania General Assembly immunizes them from liability for tortious conduct under the Pennsylvania Tort Claims Act.[28] Mrs. Lewis counters arguing the City employed Detective Lewis at all relevant times.[29] Mrs. Lewis does not address the viability of her state law claims against the City or the District Attorney. We agree with the City and the District Attorney.

The Pennsylvania General Assembly under section 8541 of the Pennsylvania Tort Claims Act mandates "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[30] Local agencies have governmental immunity unless provided otherwise.[31] The General Assembly enumerated nine exceptions to governmental immunity under section 8542(b).[32] We narrowly

construe these exceptions.[33] Mrs. Lewis must establish a statutory or common law cause of action based on the negligence of the agency or of an agency employee acting within the scope of employment for liability to be imposed.[34] Mrs. Lewis must also allege the negligent act falls under one of the nine enumerated exceptions of section 8532(b).[35]

Mrs. Lewis does not plead facts allowing us to plausibly infer Detective Lewis acted negligently within the scope of employment. This omission alone requires us to dismiss state law claims against the City and the District Attorney.[36] But Mrs. Lewis also does not plead sufficient facts allowing us to plausibly infer how the alleged negligence falls within one of the nine exceptions of section 8532(b). The Pennsylvania General Assembly mandates a local agency is unable to be liable under state law but for one of these exceptions.[37] We dismiss Mrs. Lewis's claims against the City and the District Attorney for tortious conduct such as abuse of power, malicious prosecution, civil conspiracy/collusion, and intentional infliction of emotional distress with leave to amend her claims if she can plead specific facts allowing us to plausibly infer tortious conduct.

### C. We dismiss Mrs. Lewis's claims against the City, the District Attorney, and Detective Lewis based on a respondeat superior liability theory.

Mrs. Lewis pleads the City and the District Attorney deprived her civil rights under the Fourth and Fourteenth Amendments, conspired or colluded to deprive her civil rights, and abused their power under color of state law.[38] The City and District Attorney argue Mrs. Lewis's claims arising under the Fourth and Fourteenth Amendment should be dismissed because the doctrine of respondeat superior is not recognized under section 1983.[39] Mrs. Lewis counters her pleadings are not based upon respondeat superior but rather "upon an unconstitutional municipal policy or custom, deliberate indifference in training or supervision where legally applicable, and/or knowing acquiescence or ratification by an official possessing the requisite policymaking authority."[40] Mrs.

Lewis further counters the District Attorney's "unique status and functions" do not allow for its dismissal.[41] We agree with the City and the District Attorney. Mrs. Lewis does not plead facts allowing us to plausibly infer a municipal liability claim.

Detective Lewis argues we should dismiss the civil rights claim against him because Mrs. Lewis did not plead a policy, custom, policymaker decision, failure-to-train theory, or pattern as required by law.[42] We agree with Detective Lewis.

Congress under section 1983 requires a person who acts under government authority and causes a violation of federal rights to "be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."[43] Congress intended Government authority to encompass the authority of municipalities.[44] Congress limited the liability of governmental entities for constitutional torts committed by their employees.[45] A municipality is not liable under section 1983 by way of respondeat superior.[46] But a municipal employer may be liable if the constitutional violation resulted from the employer's policy or custom.[47] We recognize three situations where a municipal employee's actions based on a policy or custom renders liability under section 1983.[48] Mrs. Lewis may only proceed on this theory after pleading facts allowing us to plausibly infer the employee followed a long-standing formal municipal policy, the employee had policy-making authority and acted as an official policymaker, or when a final policymaker delegated authority to an employee to act or speak on the city's behalf.[49]

Mrs. Lewis does not plead facts allowing us to infer the City or the District Attorney is liable for Detective Lewis's actions or Detective Lewis could be liable in an official capacity or as a state actor in his individual capacity. Mrs. Lewis alleged Detective Lewis referred a false police report and the City is "responsible for the actions of its employees."[50] Mrs. Lewis also alleged the District Attorney is legally responsible "for the acts and omissions of its employees."[51] Liability

under a theory of respondeat superior does not apply to municipalities.[52] The City or District Attorney can only be liable if Mrs. Lewis sufficiently pleads facts allowing us to plausibly infer one of the three employer liability exceptions under section 1983.[53] But Mrs. Lewis does not plead facts allowing us to plausibly infer an exception.

Mrs. Lewis similarly does not plead a policy or custom followed or created by Detective Lewis.[54] Requiring Mrs. Lewis to plead a policy or custom is not an imposition of a special heightened standard.[55] It is the same standard required by all parties who wish to raise a section 1983 claim.[56] The same facts must be sufficiently pleaded to allow us to plausibly infer an official-capacity claim against Detective Lewis. We must dismiss Mrs. Lewis's official-capacity claim for the same reason.[57]

We dismiss Mrs. Lewis's claims against the City and the District Attorney's Office for civil rights claims under the Fourth and Fourteenth Amendments, civil conspiracy/collusion claims, and claims constituting an abuse of power by persons acting under color of state law without prejudice to amend her claims if she can plead specific facts allowing us to plausibly infer liability under section 1983.

### D. We dismiss Mrs. Lewis's claim against Detective Lewis individually for abuse of power by persons acting under color of state law under section 1983.

Mrs. Lewis alleges Detective Lewis abused his power while acting under color of state law.[58] Detective Lewis moves to dismiss arguing Mrs. Lewis did not plead facts allowing us to plausibly infer Detective Lewis acted under color of state law when he referred the alleged theft to the District Attorney.[59]

Congress under section 1983 requires a person who acts under color of state law and causes a violation of federal rights to "be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."[60] An individual can act under color of state law for section

1983 liability if they "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[61] The key inquiry is "whether the action taken can be fairly attributed to the state itself."[62]

Mrs. Lewis does not plead facts allowing us to plausibly infer Detective Lewis acted in his capacity as a "state actor" when he referred the theft of the Mustang to the District Attorney. Detective Lewis is not always acting as a state actor. He does not violate the civil rights laws based on his personal conduct outside of his official capacity.[63]

We dismiss Mrs. Lewis's claim under an official-capacity and individual capacity theory against Detective Lewis with leave to amend her claims if she can plead specific facts allowing us to plausibly infer an official-capacity theory or his individual role as a state actor when he referred the alleged theft to the District Attorney.

### E. We dismiss Mrs. Lewis's claims against the District Attorney and Detective Lewis for malicious prosecution under section 1983.

Mrs. Lewis alleges a claim of malicious prosecution against the District Attorney and Detective Lewis.[64] The District Attorney and Detective Lewis argue we should dismiss this claim because Mrs. Lewis does not allege facts to plausibly infer either of them (1) initiated criminal proceedings without probable cause or (2) acted with malice or for a purpose other than securing justice.[65] Mrs. Lewis counters she pleaded enough facts to allow us to plausibly infer malice and probable cause but if not she seeks an opportunity to develop her facts.[66] We agree with the District Attorney and Detective Lewis.

To prevail on a Fourth Amendment malicious prosecution claim, Mrs. Lewis must plead facts allowing us to plausibly infer: "(1) [the District Attorney and Detective Lewis] initiated a criminal proceeding; (2) the criminal proceeding ended in [her] favor; (3) the [District Attorney and Detective Lewis] initiated the proceeding without probable cause; (4) the [District Attorney

and Detective Lewis] acted maliciously or for a purpose other than bringing [Mrs. Lewis] to justice; and (5) [Mrs. Lewis] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[67]

Mrs. Lewis does not sufficiently plead facts allowing us to plausibly infer the District Attorney or Detective Lewis initiated a criminal proceeding without probable cause and acted with malice. But she does plead the other required elements.[68] We dismiss this claim with leave to amend so Mrs. Lewis can plead the additional elements in a malicious prosecution claim.

**F. We dismiss Mrs. Lewis's remaining federal claims against Detective Lewis.**

Mrs. Lewis pleads Detective Lewis violated her civil rights under the Fourth and Fourteenth Amendments.[69] Mrs. Lewis also pleads Detective Lewis is liable for an abuse of power by persons acting under color of state law and a civil conspiracy/collusion to deprive her of her civil rights.[70] Detective Lewis interprets these claims as a Fourth Amendment false arrest and seizure claim, a Fourteenth Amendment deprivation claim, and a section 1983 conspiracy and collusion claim.[71] We address these claims in turn.

**1. Mrs. Lewis does not plead a Fourth Amendment false arrest or seizure claim against Detective Lewis.**

Detective Lewis argues Mrs. Lewis does not plead facts to plausibly infer an arrest without probable cause or Detective Lewis's responsibility for Mrs. Lewis's unlawful seizure.[72] Mrs. Lewis counters the misrepresentation concerning the Mustang establishes probable cause notwithstanding no pleaded facts.[73] Mrs. Lewis also counters she suffered an unlawful seizure.[74] We agree with Detective Lewis.

An arrest and subsequent imprisonment violates the Fourth Amendment if made without probable cause.[75] "Thus, the proper inquiry in a [s]ection 1983 claim based on false arrest is

whether the arresting officers had probable cause to believe the person arrested had committed the offense."[76]

Mrs. Lewis does not sufficiently plead facts allowing us to plausibly infer the lack of probable cause. Stating she "was wrongfully prosecuted" does not establish probable cause or an unlawful seizure.[77] We dismiss this claim with leave to amend for Mrs. Lewis to plead probable cause and an unlawful seizure.

**2. Mrs. Lewis does not plead a Fourteenth Amendment claim against Detective Lewis.**

Detective Lewis argues Mrs. Lewis does not allege facts allowing us to plausibly infer a distinct Fourteenth Amendment deprivation.[78] Mrs. Lewis counters she does not wish to use a Fourteenth Amendment substantive due process claim in place of a Fourth Amendment claim and asks to amend the pleading to ensure her Fourth Amendment claim is not dismissed.[79]

"[T]o prevail on a substantive due process claim, [Mrs. Lewis] must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience."[80]

Mrs. Lewis concedes she does not identify a Fourteenth Amendment deprivation.[81] We dismiss the Fourteenth Amendment claim with prejudice.

**3. Mrs. Lewis does not plead a conspiracy claim under the color of state law against Detective Lewis.**

Detective Lewis argues Mrs. Lewis does not plead facts allowing us to plausibly infer a section 1983 conspiracy nor does Mrs. Lewis plead an underlying constitutional violation which would support a conspiracy claim.[82] Mrs. Lewis countered we should not dismiss her conspiracy claim because she has not had the opportunity to amend her pleaded facts to show a conspiracy claim. We remind Mrs. Lewis of her obligations under Rule 11 and she cannot file pleadings

without a good faith fact basis. Complaints are not placeholders. We grant her leave to amend to plead facts or we will dismiss with prejudice.

To state a claim for a conspiracy to violate civil rights, Mrs. Lewis must allege "'(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures [Mrs. Lewis] in [her] person or property or deprives the [Mrs. Lewis] of any right or privilege of a citizen of the United States,' with the added gloss under [section] 1983 that the conspirators act under the color of state law."[83] But a civil rights conspiracy claim is unable to survive without an underlying federal constitutional violation.[84]

Mrs. Lewis does not sufficiently plead facts allowing us to plausibly infer a standalone constitutional violation under federal civil rights law because we dismissed her Fourth and Fourteenth Amendment claims. We dismiss Mrs. Lewis's civil rights conspiracy claim under section 1983 without prejudice with leave to amend her claims if she can plead specific facts allowing us to plausibly infer a conspiracy to deprive her of her civil rights.

**G. We dismiss Mrs. Lewis's remaining state law claims against Detective Lewis.**

Mrs. Lewis generally refers to a malicious prosecution claim.[85] Detective Lewis broadly interprets this claim to encompass federal and state malicious prosecution claims.[86] We do the same. Mrs. Lewis also refers to an intentional infliction of emotional distress claim.[87] We apply Pennsylvania law to this claim and find no pleaded facts allowing Mrs. Lewis to proceed on her state law claims.

**1. Mrs. Lewis does not plead sufficient facts allowing us to plausibly infer a malicious prosecution claim.**

Detective Lewis argues Mrs. Lewis did not plead facts allowing us to plausibly infer a malicious prosecution claim against him.[88] Mrs. Lewis asks us to grant her leave to amend.[89] We

again remind Mrs. Lewis of her obligations to plead facts in pleadings and not use complaints as placeholders.

A malicious prosecution claim under Pennsylvania law requires Mrs. Lewis plead: "(1) the institution of proceedings against [her are] without probable cause and with malice and (2) the proceedings were terminated in" her favor.[90] Pennsylvania's malicious prosecution statute is comparable to its federal counterpart as Pennsylvania and "'requires [Mrs. Lewis] to show all but the fifth element' of a federal malicious prosecution claim."[91]

We found Mrs. Lewis does not sufficiently plead facts allowing us to plausibly infer a federal malicious prosecution claim against Detective Lewis. We find the same for her Pennsylvania malicious prosecution claim. Mrs. Lewis again does not plead sufficient facts for us to plausibly infer Detective Lewis initiated a criminal proceeding without probable cause and acted with malice.[92] We dismiss with leave to amend for Mrs. Lewis to plead the additional elements in a state malicious prosecution claim.

**2. Mrs. Lewis does not plead a Pennsylvania intentional infliction of emotional distress claim.**

Detective Lewis argues an intentional infliction claim must meet a high threshold Mrs. Lewis does not approach.[93] Mrs. Lewis recognizes this threshold and requests leave to amend her claim to reach the standard.[94] We dismiss this claim but afford Mrs. Lewis a second chance.

Mrs. Lewis must be able to plead facts in good faith allowing us to plausibly infer: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."[95] We apply a "stringent standard" to the first element of extreme and outrageous conduct.[96] "[O]nly the most clearly desperate and ultra extreme conduct" will suffice.[97]

Mrs. Lewis acknowledges she needs to amend to reach the threshold required under Pennsylvania law for an intentional infliction of emotional distress claim.[98] We dismiss this claim with leave to amend for Mrs. Lewis to plead the required elements in an intentional infliction of emotional distress claim**.**

## III. Conclusion

We grant the pending motions requiring we dismiss Mrs. Lewis's pro se conclusory allegations. We dismiss the withdrawn claims against the Police Department and under the Fourteenth Amendment with prejudice. We grant Mrs. Lewis leave to timely amend in good faith consistent with Rule 11 and this Memorandum with facts allowing us to plausibly infer the alleged civil rights liability of the City, the District Attorney's Office, and Detective Lewis arising from her arrest and prosecution. We also grant her leave to plead facts allowing us to plausibly infer a basis for her varied state law claims.

---

[1] ECF 1 at ¶ 6.

[2] *Id.*

[3] *Id.* at ¶ 7.

[4] *Id.*

[5] *Id.* at ¶ 8.

[6] *Id.*

[7] *Id.*

[8] *Id.* at ¶ 9.

[9] *Id.*

[10] ECF 17 at 2 (using the pagination assigned by the CM/ECF docketing system). A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"

*Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

Our Court of Appeals further directs us to construe a pro se litigant's pleadings "liberally" and "hold [her] to 'less stringent standards than formal pleadings drafted by lawyers.'" *Freeman v. Lincalis*, 158 F.4th 166, 175 (3d Cir. 2025) (quoting *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024)). We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). But "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). They "must still ultimately 'abide by the same rules that apply to all other litigants.'" *Freeman*, 158 F.4th at 175 (quoting *Mala*, 704 F.3d at 245).

[11] ECF 17 at 5–6.

[12] ECF 18 at 1–4.

[13] ECF 18 at 4.

[14] ECF 21 at 5–6.

[15] *Id.* at 6–11.

[16] *Id.* at 12–13.

[17] ECF 24 at 3.

[18] *Id.* at 3–5.

[19] *Id.* at 4–7.

[20] *Id.* at 5–6.

[21] ECF 23 at 2.

[22] *Id.* at 5–7.

[23] *Id.* at 7–9, 11.

[24] *Id.* at 10–11.

[25] ECF 25 at 4–5.

[26] ECF 17 at 5; ECF 18 at 4.

[27] ECF 1 at ¶ 9.

[28] ECF 17 at 5–6; ECF 21 at 12–13. The District Attorney's Office argues the only viable claim against it under state law is Mrs. Lewis's claim for intentional infliction of emotional distress. ECF 21 at 12.

[29] ECF 1 at ¶ 3.

[30] 42 PA. CONS. STAT. § 8541 (1980).

[31] *Brown v. Phila. Bd. of Ethics*, 356 A.3d 250, 256 (Pa. Commw. Ct. 2026); *N.N. v. Sch. Dist. of Phila.*, 349 A.3d 1081, 1088 (Pa. Commw. Ct. 2025) (quoting 42 PA. CONS. STAT. § 8542(a)).

[32] 42 PA. CONS. STAT. § 8542(b). These nine exceptions include and are related to: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; utility service facilities; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse.

[33] *Fargione v. Sweeney*, No. 16-5878, 2019 WL 859261, at *15 (E.D. Pa. 2019) (citing *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1123 (1987); *Weaver v. Franklin Cnty.*, 918 A.2d 194, 199–200 (Pa. Commw. Ct. 2007) (citing *Granchi v. Borough of N. Braddock*, 810 A.2d 747 (Pa. Commw. Ct. 2002)).

[34] *West ex rel. S.W. v. Pittsburgh Pub. Schs.*, 327 A.3d 340, 344 (Pa. Commw. Ct. 2024); *Olick v. City of Easton*, No. 863-2018, 2019 WL 1500930, at *3 (Pa. Commw. Ct. 2019); *City of Phila. v. Glim*, 613 A.2d 613, 616 (Pa. Commw. Ct. 1992).

[35] *Brown v. Phila. Bd. of Ethics*, 356 A.3d 250, 257 (Pa. Commw. Ct. 2026) (quoting *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Commw. Ct. 2014)).

[36] *Olick*, 2019 WL 1500930, at *3; *West*, 327 A.3d at 344; *Glim*, 613 A.2d at 616.

[37] *Brown*, 356 A.3d at 257 (quoting *Orange Stones Co.*, 87 A.3d at 1022).

[38] ECF 1 at ¶ 9.

---

[39] ECF 17 at 6–7; ECF 21 at 7–8.

[40] ECF 18 at 2.

[41] ECF 24 at 3.

[42] *Id.* Mrs. Lewis argues her individual-capacity claims against Officer Lewis are distinct from official capacity theories. ECF 25 at 7. Her argument does alter our finding Mrs. Lewis pleaded official capacity claims but generally referred to Officer Lewis in his individual capacity without pleading facts as to his individual liability. Mrs. Lewis needs to plead facts (not conclusions) as to each person/entity she wishes to sue on each claim.

[43] 42 U.S.C. § 1983.

[44] *E.g.*, *Rush v. City of Phila.*, No. 19-932, 2021 WL 308229, at *4 (E.D. Pa. Jan. 29, 2021), *aff'd*, 78 F.4th 610 (3d Cir. 2023); *Burgos v. City of Phila.*, 439 F. Supp. 3d 470, 484 (E.D. Pa. 2020); *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

[45] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–95 (1978).

[46] *Rush*, 2021 WL 308229, at *4, *aff'd*, 78 F.4th 610 (3d Cir. 2023); *McGreevy*, 413 F.3d at 367 (citing *Monell*, 436 U.S. at 691, 694).

[47] *Howard v. Wellpath, LLC*, No. 22-3241, 2023 WL 2226797, at *3 (E.D. Pa. Feb. 24, 2023) (citing *Monell*, 436 U.S. at 694).

[48] *Burgos*, 439 F. Supp. 3d at 484–85 ("The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.") (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)).

[49] *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006); *Burgos*, 439 F. Supp. 3d at 484–85; *Natale*, 318 F.3d at 584.

[50] ECF 1 at ¶¶ 3, 6.

[51] *Id.* at ¶ 5.

[52] *Rush*, 2021 WL 308229, at *4, *aff'd*, 78 F.4th 610 (3d Cir. 2023); *McGreevy*, 413 F.3d at 367 (citing *Monell*, 436 U.S. at 691, 694).

[53] *Hill*, 455 F.3d at 245; *Burgos*, 439 F. Supp. 3d at 484–85; *Natale*, 318 F.3d at 584.

[54] ECF 18 at 3; *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("'A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess final authority to establish a municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanently and well-settled" as to virtually constitute law.'") (citation modified).

[55] *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993); ECF 18 at 3.

[56] *Hill*, 455 F.3d at 245; *Burgos*, 439 F. Supp. 3d at 484–8; *Natale*, 318 F.3d at 584.

[57] *McTernan*, 564 F.3d at 658.

[58] ECF 1 ¶ 9.

[59] ECF 23 at 5–7.

[60] 42 U.S.C. § 1983.

[61] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (citation modified).

[62] *Id.*

[63] *Kach v. Hose*, 589 F.3d 626, 645–49 (3d Cir. 2009).

[64] While Mrs. Lewis unsuccessfully raises section 1983 claims against the District Attorney's Office, we address malicious prosecution as a distinct issue given Mrs. Lewis denotes it as a separate claim. ECF 1 at ¶ 9.

[65] ECF 21 at 7–9; ECF 23 at 9.

[66] ECF 24 at 5–6; ECF 25 at 2–4.

[67] *Hicks v. City of Phila.*, 783 F. Supp. 3d 834, 856 (E.D. Pa. 2025) (quoting *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)).

[68] *See* ECF 1 at ¶¶ 6–9.

[69] *Id.* at ¶ 9.

[70] *Id.*

[71] ECF 23 at 7–9.

[72] *Id.* at 8–9.

[73] ECF 25 at 2–3.

[74] *Id.*

[75] *Mitchell v. Robinson*, No. 24-5687, 2025 WL 1047714, at *5 (E.D. Pa. Apr. 8, 2025); *Maiale v. Youse*, No. 3-5450, 2004 WL 1925004, at *12 (E.D. Pa. Aug. 24, 2004) ("[f]alse arrest and false imprisonment are thus nearly identical claims, and are generally analyzed together") (citing *Olender v. Twp. of Bensalem*, 32 F.Supp.2d 775, 791 (E.D. Pa. 1999)); *Groman*, 47 F.3d at 636 ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures . . . [i]f the jury found in plaintiffs' favor on the false arrest claim, it could also find that [the plaintiff] suffered a violation of his constitutional rights by virtue of his detention pursuant to that arrest").

[76] *Irick v. City of Phila.*, No. 07-13, 2008 WL 2120171, at *8 (E.D. Pa. May 20, 2008) (internal quotations omitted).

[77] ECF 1 at ¶ 7; *see Mitchell*, 2025 WL 1047714, at *5; *Maiale*, 2004 WL 1925004, at *12; *Groman*, 47 F.3d at 636.

[78] ECF 23 at 9.

[79] ECF 25 at 5–6.

[80] *Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)).

[81] ECF 25 at 5–6.

[82] ECF 23 at 9.

[83] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

[84] *Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.").

[85] ECF 1 at ¶ 9.

[86] ECF 23 at 6–7, 9.

[87] ECF 1 at ¶ 9.

[88] ECF 23 at 10.

[89] ECF 25 at 6.

[90] *York v. Kanan*, 298 A.3d 533, 542 (Pa. Commw. Ct. 2023) (citing *Alleyne v. Pirrone*, 180 A.3d 524, 528 n.3 (Pa. Commw. Ct. 2018)).

[91] *Wallace v. City of Phila.*, No. 25-290, 2025 WL 2935248, at *8 n.11 (E.D. Pa. Oct. 15, 2025) (quoting *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018)).

[92] *Id.*

[93] ECF 23 at 9–10.

[94] ECF 25 at 6.

[95] *Robinson v. Nat'l R.R. Passenger Corp.*, 821 F. App'x 97, 102 (3d Cir. 2020).

[96] *Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

[97] *Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 827 (E.D. Pa. 2017) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).

[98] ECF 25 at 6.