# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NAKISHA J. LEWIS,
Plaintiff,
v.
DETECTIVE RALPH D. LEWIS, individually and in his official capacity;
CITY OF PHILADELPHIA;
PHILADELPHIA DISTRICT ATTORNEY'S OFFICE,
Defendants.

**Civil Action No. 2:26-cv-05545-MAK**

AMENDED COMPLAINT
Plaintiff Nakisha J. Lewis, pro se, respectfully files this Amended Complaint pursuant to the Court's September 29, 2026 Order granting leave to amend, and alleges as follows:

## I. NATURE OF THE ACTION

1. This civil-rights action arises from Plaintiff's arrest and prosecution concerning a 1967 Ford Mustang involved in a marital-property dispute between Plaintiff and her then-husband, Defendant Detective Ralph D. Lewis ("Detective Lewis").

2. Plaintiff alleges Detective Lewis invoked governmental channels and law-enforcement authority—not mere private-citizen status—to initiate and channel the criminal process against her.

3. Plaintiffs' claim rests on the official record sequence: Detective Lewis's internal Request for Investigation (RFI) to DAO supervisors, DAO's formal referral to the OAG, and the OAG's subsequent criminal investigation, arrest decision, and prosecution, despite ample exculpatory evidence.

4. Plaintiff brings claims under 42 U.S.C. § 1983, the Fourth Amendment, and Pennsylvania law. Jurisdiction exists under 28 U.S.C. §§ 1331, 1343, 1367. Venue is proper in this District under 28 U.S.C. § 1391.

5. Plaintiff is an adult Pennsylvania resident. Defendant Lewis is a County Detective sued individually and in his official capacity; City of Philadelphia is a municipal entity; DAO participated in the official referral.

## II. MUSTANG AND MARITAL-PROPERTY DISPUTE

6. During the marriage, Plaintiff purchased the 1967 Ford Mustang as a gift for Defendant Lewis. After separation in September 2018, Lewis removed other vehicles but intentionally left the 1967

Mustang at Plaintiff's residence, where it remained in her open possession.

7. Parties and their attorneys formalized a 2019 written Interim Property Settlement Agreement ("Interim PSA") that, according to Plaintiff and the family court, provided for her continued possession of the Mustang.

8. Title to the Mustang was transferred into plaintiff name at a time when plaintiff relying in good faith on the interim PSA, she believed she had lawful authority to possess and retitle the vehicle; plaintiff did not forge or knowingly participate in any irregularity involving the title paperwork and did not know or expect that detective Lewis would be required to be present for the administrative aspect of the transfer.

## III. USE OF GOVERNMENTAL CHANNELS & DAO REFERRAL

9. On February 14, 2023, Detective Lewis submitted a formal Request for Investigation (RFI) about Plaintiff and the Mustang to DAO supervisors (Sgt. Gerald Rocks, Sgt. Megan Lynch).

10. On March 27, 2023, ADA Clarke Beljean circulated an interoffice memo to First Assistant DA C. Temin titled "County Det. Ralph Lewis #115 Request for Investigation," with documents from Lewis attached. On March 30, 2023, OAG received the DAO's referral regarding Lewis's complaint.

11. This sequence proves Lewis's allegations were advanced through governmental and not merely private channels, invoking processes associated with law enforcement employment. *See Groman v. Township of Manalapan, 47 F.3d 628, 638–39 (3d Cir. 1995); Barna v. City of Perth Amboy, 42 F.3d 809, 816–17 (3d Cir. 1994).*

## IV. DISCLOSURE OF EXCULPATORY INFORMATION, TAG AGENCY MISCONDUCT, AND SELECTIVE PROSECUTION

12. During investigations, Plaintiff was truthfully questioned about the duplicate Mustang title. She stated she did not know who ordered or received the title; upon seeing the address, acknowledged only the street and said her boyfriend lived there. Plaintiff never denied facts nor withheld information. When she learned her boyfriend was responsible, she told investigators immediately.

13. Investigators continued to focus on Plaintiff and disregarded evidence of her boyfriend's actual involvement. Notably, Plaintiff never forged nor signed the title, nor authorized the application. All exculpatory information was provided in good faith.

14. The investigative record also revealed the auto tag business processed the transaction using

expired or stolen notary seals, these irregularities well documented by law enforcement. Despite clear evidence of the agency's wrongdoing, The defendants took no action against the business or its employees. Rather, Defendants continued to target Plaintiff alone. This selective and irrational approach, pursuing Plaintiff while failing to charge those demonstrably responsible, shows malice, a lack of probable cause, and official indifference to exculpatory evidence. *See Halsey v. Pfeiffer, 750 F.3d 273, 297–99 (3d Cir. 2014); United States v. Armstrong, 517 U.S. 456, 464 (1996); Wilson v. Russo, 212 F.3d 781, 789–91 (3d Cir. 2000),* and supports all federal and state claims herein.

15. Although Plaintiff and Detective Lewis were still legally married at all relevant times, Detective Lewis misrepresented Plaintiff as his "ex-wife" in his formal Request for Investigation as well as in his communications with the Philadelphia District Attorney's Office and Pennsylvania Office of Attorney General.

16. This misrepresentation was material, as it led authorities to view the property dispute as one involving a former spouse instead of a current marriage, increasing the likelihood the Mustang would be treated as solely Detective Lewis's property and framing the issue as potential criminal theft, rather than as a civil or family-law matter.

17. By misrepresenting Plaintiff as his "ex-wife" when the parties were still legally married, Detective Lewis created a materially misleading account of the property dispute. This directly impacted the assessment of probable cause, as law enforcement and prosecutors treated the 1967 Mustang as former spouse property, rather than as marital property subject to a valid family court agreement. Such misrepresentations have been held by the Supreme Court and Third Circuit to invalidate otherwise facially valid probable cause and warrant findings. See *Wilson v. Russo, 212 F.3d 781, 786–89 (3d Cir. 2000); Franks v. Delaware, 438 U.S. 154, 171–72 (1978)*.

18. Plaintiff did not forge, sign, or direct the forgery or fraudulent application for the title to the Mustang. Plaintiff's then-boyfriend, acting without Plaintiff's knowledge or authorization, ordered the duplicate title and completed paperwork at the auto tag agency.

Plaintiff had lawfully owned the Mustang under a court-approved marital property settlement and possessed it openly after the parties' separation.

19. As soon as Plaintiff became aware of her boyfriend's actions, she promptly and truthfully disclosed all material facts to law enforcement and prosecutors. At no point did Plaintiff attempt

to hide or benefit unlawfully from the paperwork or to mislead investigators about her actions or knowledge.

20. Rather than discontinue prosecution or shift the focus of the investigation towards the party actually responsible for the alleged title irregularities, Defendants continued to target Plaintiff as the primary criminal defendant. This decision was made despite clear evidence of Plaintiff's lack of criminal intent and after law enforcement was notified both of Plaintiff's legal ownership and the boyfriend's role in the paperwork.

21. Criminal prosecution for forgery or title irregularities requires probable cause to believe that Plaintiff, and not a third party, acted with the intent to defraud or commit a crime. Police and prosecutors, having been notified of Plaintiff's bona fide ownership and her boyfriend's role, had no such probable cause in this case. Their continued prosecution of Plaintiff—rather than the responsible third party—violated Plaintiff's Fourth Amendment rights and Pennsylvania law. See *Wilson v. Russo*, 212 F.3d 781, 789–91 (3d Cir. 2000); *Halsey v. Pfeiffer*, 750 F.3d 273, 297–99 (3d Cir. 2014).

**V. ARREST, PROSECUTION, AND FAVORABLE TERMINATION**

22. Despite all exculpatory evidence, the DAO and OAG pursued charges. On January 23, 2024, the OAG approved charges. February 2, 2024, a warrant was issued. Plaintiff surrendered, was searched, handcuffed, detained, and prosecuted.

23. After a criminal trial, Plaintiff was acquitted of all charges. Family court reaffirmed Plaintiff's lawful ownership of the Mustang per the PSA; criminal records have since been expunged. *See Thompson v. Clark, 596 U.S. 36, 49 (2022).*

**VI. CLAIMS FOR RELIEF**

**COUNT I — 42 U.S.C. § 1983: UNREASONABLE SEIZURE / FALSE ARREST (FOURTH AMENDMENT,**

Plaintiff incorporates all prior paragraphs.

24. Detective Lewis used his status, authority, and official procedural channels (submitting a formal RFI, invoking DAO and OAG referral) to cause Plaintiff's arrest for a dispute that was fundamentally civil and marital in nature. *See Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Barna v. City of Perth Amboy, 42 F.3d 809, 816–17 (3d Cir. 1994); Screws v. United States, 325 U.S. 91, 111 (1945).*

25. Plaintiff was seized and deprived of liberty due to these actions.

26. The arrest and prosecution lacked probable cause in light of the marriage settlement, documentation provided to investigators, Plaintiff's forthright disclosures about the true sequence, and Defendants' choice to ignore both the Plaintiff's boyfriend and the agency's wrongdoing. *See Wilson v. Russo, 212 F.3d 781, 786–89 (3d Cir. 2000); Halsey v. Pfeiffer, 750 F.3d 273, 297–99 (3d Cir. 2014).*

27. Plaintiff was acquitted; damages resulted.

**VII — 42 U.S.C. § 1983: MALICIOUS PROSECUTION** (FOURTH AMENDMENT, Against All Defendants)

**COUNT II**

28. Plaintiff incorporates all prior paragraphs.

29. Detective Lewis's invocation of governmental process, knowledge of exculpatory facts, and the criminal referral caused the institution and continuation of the prosecution in the absence of probable cause. *Thompson v. Clark, 596 U.S. 36, 49 (2022); Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).*

30. Prosecutors and officers ignored Plaintiff's disclosure, identifying her boyfriend as the person who actually caused the title application and disregarded the notary/tag evidence; prosecution was continued with malice or reckless indifference to exculpatory evidence. *Halsey, 750 F.3d at 297–99.*

31. Plaintiff was acquitted at trial and has suffered all damages alleged.

**VIII — 42 U.S.C. § 1983: MONELL MUNICIPAL LIABILITY** (Against City/DAO)

**COUNT III**

32. Plaintiff incorporates all prior paragraphs.

33. On information and belief, the City and DAO, through a policy/custom/practice of favoring employee-originated internal criminal referrals and failing to train or supervise against criminalizing marital/family property disputes, caused Plaintiff's injuries. *Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690–95 (1978); McTernan v. City of York, 564 F.3d 636, 658–59 (3d Cir. 2009); Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003).*

*{{Upon information and belief, the City of Philadelphia, by and through its Police Department, maintained and promulgated official directives and policies—including Philadelphia Police Department Directive 12.7 (Vehicle Theft Investigation) and Directive 12.11 (Complaint or*

*Incident Report/75-48). These policies required police, detectives, and supervisors to distinguish bona fide criminal vehicle theft from family law or civil marital property disputes before approving criminal charges. These directives mandated diligent and impartial collection of all material facts, required the inclusion of exculpatory documentation such as court-approved marital property settlement agreements, and instructed personnel to avoid criminalizing disputes properly addressed in family or civil court absent clear criminal intent. Rather than enforce these directives, policymaking and supervisory officials within the DAO and City failed to appropriately train, supervise, or discipline prosecutors and officers handling Plaintiff's case. This resulted in prosecution of Plaintiff for conduct governed by family law, despite Plaintiff's lawful ownership and clear exculpatory evidence on the record.*

*The regular disregard, non-enforcement, and lack of training or supervision concerning these directives and policies reflects a municipal custom, policy, or practice that was the moving force behind the initiation and continuation of criminal process against Plaintiff. *Monell v. Department of Social Services*, 436 U.S. 658, 690–95 (1978); *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).*

*Plaintiff incorporates these policy and custom allegations by reference and alleges that all constitutional injuries suffered were proximately caused by the City's failure to train, supervise, or enforce Philadelphia Police Department Directives regarding proper handling of civil/family property disputes.}}*

28. Plaintiff preserves a claim for discovery and may further plead the existence of ratification, deliberate indifference, or final policymaker conduct after internal records are obtained.

**IX — 42 U.S.C. § 1983: CONSPIRACY**

**COUNT IV**

34. Plaintiff incorporates all prior paragraphs.

35. Detectives, DAO supervisors, and OAG staff acted in concert—using internal channels with full knowledge of exculpatory evidence and the tag agency wrongdoing—to jointly cause Plaintiff's prosecution, rather than a neutral or good-faith evaluation of the facts. *See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294–95 (3d Cir. 2018).*

36. Plaintiff has discovery that fully identified its participants.

**X — PENNSYLVANIA MALICIOUS PROSECUTION**

**COUNT V**

37. Plaintiff incorporates all prior paragraphs.

38. Detective Lewis and/or the City and DAO, by their conduct, caused initiation and continuation of proceedings without probable cause or malice; full knowledge of Plaintiff's innocence was disregarded. *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988).*

39. Proceedings ended in Plaintiff's favor. Plaintiff suffered the alleged damages.

**XI— INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**COUNT VI**

40. Plaintiff incorporates all prior paragraphs.

41. Plaintiff possesses supporting medical and counseling documentation.

42.Plaintiff suffered the traumatic and violent loss of her son, Domonic Kevin Billa-Lewis, on March 29, 2021. At all times relevant, Detective Lewis had actual and personal knowledge of Plaintiff's profound grief and emotional fragility resulting from her son's murder. Despite this, Detective Lewis deliberately invoked his official status, and used governmental investigative channels to initiate a criminal prosecution against Plaintiff regarding property Detective Lewis knew she lawfully possessed per the marital property settlement.

43.Plaintiff alleges that Detective Lewis's actions were undertaken with full knowledge of the extraordinary vulnerability, psychological distress, and suffering Plaintiff was enduring, and nonetheless intentionally or recklessly pursued criminal allegations that he knew (or should have known) would amplify Plaintiff's pain, anxiety, and trauma beyond any ordinary emotional upset or litigation-related fear.

44. The arrest, criminal indictment, public humiliation, and threat of imprisonment imposed upon Plaintiff further devastated her emotional health, compounding her existing post-traumatic stress, grief symptoms, and depression. Plaintiff suffered sleeplessness, panic attacks, loss of concentration, inability to work for periods of time, weight gain, and physical symptoms including headaches, chest pain, and chronic fatigue. Plaintiff at times withdrew from family, friends, and social activities, and struggled to take care of her daily responsibilities and obligations.

45. As a direct and proximate result, Plaintiff required repeated medical and psychological treatment to manage severe anxiety, panic, and depression. Plaintiff's treating professionals

documented the profound aggravation of Plaintiff's pre-existing emotional distress, with further decline following her arrest and prosecution.

46. Plaintiff alleges that the totality of the conduct by Detective Lewis, viewed in light of his unique knowledge of Plaintiff's emotional state, was extreme and outrageous under Pennsylvania law. It falls well outside the bounds of decency and is intolerable in a civilized society, satisfying the stringent requirements for IIED. See *Hoy v. Angelone*, *720 A.2d 745, 753-54 (Pa. 1998)*; *Robinson v. Nat'l R.R. Passenger Corp.*, *821 F. App'x 97, 102 (3d Cir. 2020)*.

**XIV. PENDING TRIAL TRANSCRIPTS**

47. Plaintiff has formally requested production of all certified transcripts from the underlying criminal proceedings. As of the filing of this Amended Complaint, Plaintiff has not yet received the complete transcript record due the notification that the stenographer no longer is an employee by the office and at the present time Plaintiff is told via email when they have located a stenographer to review notes, they will contact plaintiff to advise cost and a date when a transcriber can produce the transcripts.

48. Once available, such transcripts will further document the testimony of all material witnesses, Plaintiff's defense and disclosures, and the evidence presented concerning the Mustang, the title/forgery, and law enforcement's response to exculpatory material. Plaintiff ask to reserve the right to amend or supplement her factual allegations and claims to conform to information revealed in the trial transcripts, consistent with the Federal Rules of Civil Procedure and any Order of this Court. See Fed. R. Civ. P. 15(b).

Plaintiff will further support her claims with evidence developed from the criminal trial transcript, as permitted by Fed. R. Civ. P. 15(b)."

**XV. PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests judgment for:

A. Enter judgment in Plaintiff's favor and against each Defendant found legally responsible, for the specific constitutional and/or state-law claims proven against them, according to each Defendant's individual or municipal role and participation;
B. Award compensatory damages in an amount not less than seventy-five thousand dollars ($75,000), or such greater amount as the evidence at trial may warrant;
C. Award punitive damages against any Defendant whose conduct meets the legal standard for punitive relief;
D. Award allowable costs and all other legal or equitable relief the Court deems appropriate;
E. Grant such further and additional relief as is just under the circumstances.

**XVI. REQUEST FOR APPOINTMENT OF COUNSEL**

Plaintiff respectfully renews her request for appointment of counsel under 28 U.S.C. § 1915(e)(1) considering the complexity of her civil rights claims. *See Tabron v. Grace, 6 F.3d 147, 155–57 (3d Cir. 1993).*

**XVII. JURY DEMAND**

Plaintiff respectfully request a jury trial on all claims that are so triable.

Respectfully submitted, 10/18/2026
Nakisha J. Lewis
Plaintiff, Pro Se

CERTIFICATE OF SERVICE

I, Nakisha J. Lewis, certify that a true and correct copy of the foregoing was served upon all counsel of record by electronic mail and/or the Court's ECF system on October 18, 2026

Nakisha J. Lewis
Pro Se
10/18/26