**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NAKISA J. LEWIS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-5545** |
| | : | |
| **DETECTIVE RALPH D. LEWIS, CITY OF PHILADELPHIA, PHILADELPHIA DISTRICT ATTORNEY'S OFFICE** | : | |

# MEMORANDUM

**KEARNEY, J.** **November 24, 2026**

A Philadelphia detective separated from his wife asked the Philadelphia District Attorney who should investigate his February 2023 discovery of his forged signature on title transfer documents for a 1967 Ford Mustang car once titled in his name but then titled in his separated wife's name. He described his separated wife as his "ex-wife" rather than "separated wife" in his request for investigation when providing background facts in his request. The Philadelphia District Attorney forwarded the detective's request to the Pennsylvania Attorney General for prosecution if warranted in the Attorney General's judgment. The separated wife admits fully cooperating with the investigation into the Mustang's ownership including confirming her then-boyfriend's role in transferring title. She claimed no knowledge of the then-boyfriend's actions. The Attorney General prosecuted the separated wife and did not prosecute the then-boyfriend. The state court acquitted her after trial.

The separated wife now pro se sues her former husband, the City, and the District Attorney for federal civil rights claims and a variety of state law claims. We dismissed her first attempt at pleading these claims with leave to amend. She returns with amended pro se allegations. We dismiss her federal claims after she has now twice not plead facts allowing us to plausibly infer a

civil rights claim. We decline to exercise supplemental jurisdiction over her remaining state law claims without prejudice for her to timely pursue remedies in state court if warranted.

## I. Alleged pro se facts based on the integral request for investigation.

Nakisa Lewis bought a 1967 Mustang for Philadelphia Police Detective Ralph Lewis during their time living together as husband and wife.[1] Detective Lewis left the marital home in September 2018.[2] They separated but did not reach a final divorce decree.[3] Detective Lewis understood the car remained titled in his name.[4] Detective Lewis allowed the car to remain in Mrs. Lewis's possession at the marital home.[5] Mrs. Lewis thought she had the right to possess and retitle the Mustang under an interim property settlement agreement in their ongoing divorce proceedings.[6] The Pennsylvania Department of Transportation transferred title to Mrs. Lewis at an unpleaded time.[7]

Detective Lewis inquired about the status of this 1967 Mustang with the Pennsylvania Department of Transportation.[8] The Department researched and responded to Detective Lewis in February 2023.[9] The Department reported the title of the 1967 Mustang had now been placed in the name of his separated wife alone.[10] He also learned the documents to transfer title to his separated wife purported to have his signatures along with a recital of consideration paid to him in exchange for the transfer of title.[11] He described his signatures on those documents as forged.[12]

Detective Lewis asked the Philadelphia District Attorney to advise him as to what agency would investigate an apparent forgery and transfer of the 1967 Mustang to his wife's name.[13] The District Attorney decided to transfer the prosecution to the Pennsylvania Attorney General.[14]

Mrs. Lewis swears she fully cooperated with the investigation.[15] She admits some role in transferring title.[16] Mrs. Lewis concludes her then-boyfriend must have signed documents to transfer title.[17] Mrs. Lewis claims she did not know what her then-boyfriend did.[18] She confirmed

she understood the transfer of title to her name to be an "administrative" matter apparently based on her understanding of an interim property settlement agreement with Detective Lewis.[19]

***Mrs. Lewis is found not guilty in charges brought by the Attorney General.***

The Attorney General decided to prosecute.[20] A state court acquitted Mrs. Lewis of these charges.[21] A state court expunged the charges at an unpleaded time.[22]

***Mrs. Lewis pro se sues Detective Lewis and state actors.***

And then this domestic discord from Philadelphia County family and criminal courts came to federal court. Mrs. Lewis, upon being found not guilty at trial, turned around and sued Detective Lewis, the City, its Police Department, and the District Attorney alleging the arrest and unsuccessful prosecution violated her civil rights under the Fourth and Fourteenth Amendments.[23] She also alleged Detective Lewis, the City, its Police Department, and the District Attorney abused power by persons acting under the color of state law, civil conspiracy/collusion to deprive Mrs. Lewis's civil rights, malicious prosecution, and intentional infliction of emotional distress.[24] We dismissed Mrs. Lewis's claims against the Police Department and claims under the Fourteenth Amendment against Detective Lewis with prejudice.[25] But we granted Mrs. Lewis leave to amend with detailed facts allowing us to plausibly infer civil rights liability against the City, the District Attorney, and Detective Lewis arising from her arrest and prosecution.[26] We also granted her leave to plead facts allowing us to plausibly infer a basis for her state law claims.[27]

Mrs. Lewis timely amended to sue Detective Lewis, the City, and the District Attorney.[28] Mrs. Lewis claims unreasonable seizure and false arrest under the Fourth Amendment, federal malicious prosecution, conspiracy, and Pennsylvania malicious prosecution against Detective Lewis, the City, and the District Attorney.[29] She claims municipal liability under section 1983

against the City and the District Attorney.[30] She also claims intentional infliction of emotional distress under Pennsylvania Law against Detective Lewis.[31]

## II. Analysis

Detective Lewis, the City, and the District Attorney now move to dismiss Mrs. Lewis's amended claims.[32] Detective Lewis argues Mrs. Lewis does not state a claim for malicious prosecution, conspiracy, intentional infliction of emotional distress, or other causes of action.[33] Mrs. Lewis responds she pleads facts showing Detective Lewis's "request for investigation" identified her as his "ex-wife" which she claims is a material misrepresentation.[34] The City argues we must dismiss Mrs. Lewis's claims because she fails to allege facts allowing us to plausibly infer the City's liability based on the theory of respondeat superior.[35] Mrs. Lewis does not respond to the City. The District Attorney argues Mrs. Lewis cannot proceed as a matter of law because parties cannot bring civil actions against the Office as a department of the City under a theory of respondeat superior, under Pennsylvania state law, or under civil rights claims.[36] Mrs. Lewis responds arguing the District Attorney ignores key facts concerning its malicious failure to properly investigate.[37]

We afforded Mrs. Lewis an earlier opportunity to amend. Her amended allegations still do not state a federal claim. We dismiss Mrs. Lewis's federal claims against the City, the District Attorney, and Detective Lewis with prejudice. We decline to exercise supplemental jurisdiction over her remaining Pennsylvania claims.

### A. We dismiss Mrs. Lewis's federal claims against the City and the District Attorney based on a municipal liability theory.

Mrs. Lewis claims the City and District Attorney are liable for constitutional torts under a municipal liability theory "through a policy/custom/practice of favoring employee-originated internal criminal referrals and failing to train or supervise against criminalizing martial/family

property disputes[.]"[38] She claims the City and District Attorney violated her Fourth Amendment rights by conducting an unreasonable seizure, falsely arresting her, and maliciously prosecuting her.[39] She argues the City and District Attorney seized and deprived her of liberty without probable cause, proceeded with malice in arresting her, and acted in concert to prosecute her.[40] Mrs. Lewis also claims the City and District Attorney participated in a civil rights conspiracy against her.[41] The City and District Attorney move to dismiss this amended claim arguing they cannot be liable for Detective Lewis's constitutional torts by way of respondeat superior.[42] They also argue Mrs. Lewis has not pleaded facts allowing us to plausibly infer Detective Lewis acted consistent with a government policy or custom to allow a municipal liability claim.[43] Mrs. Lewis replied she pleaded facts allowing us to plausibly infer a basis for municipal liability because the District Attorney did not act with proper due diligence regarding a conflict of interest given her separated husband's role as a City Detective.[44] We agree with the City and District Attorney.

Congress under section 1983 requires a person who acts under government authority and causes a violation of federal rights to "be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."[45] Congress intended government authority to encompass the authority of municipalities.[46] But Congress limited the liability of governmental entities for constitutional torts committed by their employees.[47] A municipality is not liable under section 1983 by way of respondeat superior.[48]

But a municipal employer may be liable if the constitutional violation resulted from the employer's policy or custom.[49] We recognize three situations where a municipal employee's actions based on a policy or custom render liability under section 1983.[50] The first situation occurs when "the appropriate officer or entity" makes a policy statement and an issue arises from the policy in action.[51] "The second occurs where no rule has been announced as policy but federal law

has been violated by an act of the policymaker itself."[52] The third situation arises when a policymaker did not act but " the need to take some action to control the agents of the government is so obvious" and current practices are "likely to result in the violation of constitutional rights … the policymaker can reasonably be said to have been deliberately indifferent to the need."[53] Mrs. Lewis may only proceed on this municipal liability theory after pleading facts allowing us to plausibly infer a municipal employee followed a long-standing formal municipal policy, the employee had policy-making authority and acted as an official policymaker, or when a final policymaker delegated authority to the employee to act or speak on the city's behalf.[54]

Mrs. Lewis does not plead facts allowing us to plausibly infer the City or District Attorney is liable as an employer for Detective Lewis's "request for investigation." Mrs. Lewis pleads the City and District Attorney did not follow its written policies requiring "police, detectives, and supervisors to distinguish bona fide criminal vehicle theft from family law or civil marital property disputes before approving criminal charges," "diligent and impartial collection of all material facts," and "personnel to avoid criminalizing disputes properly addressed in family or civil court absent clear criminal intent."[55] She alleges this "disregard, non-enforcement, and lack of training or supervision" of these policies itself reflects a municipal custom or policy resulting in her alleged injuries.[56]

But Mrs. Lewis pleads no facts supporting this legal conclusion. She does not allege facts allowing us to plausibly infer the City or District Attorney adhered to a custom or policy of disregarding, not enforcing, or failing to train its employees on its policies concerning conflicts of interests in investigations. The undisputed record confirms Detective Lewis asked the District Attorney as to who should investigate the transfer of a vehicle with his forged signatures. The District Attorney referred the matter to the Attorney General. Mrs. Lewis agrees. Mrs. Lewis is

looking for a conspiracy but offers no facts allowing us to plausibly infer the District Attorney or City employer did anything wrong.

We dismiss Mrs. Lewis's claims against the City and the District Attorney for Fourth Amendment unreasonable seizure and false arrest and malicious prosecution, civil conspiracy, and municipal liability.

**B. We dismiss Mrs. Lewis's claims under for a Fourth Amendment false arrest and unreasonable seizure claim against Detective Lewis.**

Mrs. Lewis repeats her previous allegations Detective Lewis used his authority to file claims against her and lead to her arrest.[57] She further pleads no probable cause existed for her arrest and prosecution "in light of the marriage settlement[.]"[58] Detective Lewis argues Mrs. Lewis pleads no facts as to how he directed, controlled, or influenced the investigation by the Attorney General and she merely asserts legal conclusions unsupported by her alleged facts.[59] Mrs. Lewis counters Detective Lewis misrepresented her marital status as an "ex-wife" and this misrepresentation somehow affected the way investigators and prosecutors approached the dispute.[60] She further argues this "ex-wife" representation means the investigators and prosecutors lacked probable cause.[61] We cannot find these amended pleaded facts allow us to plausibly infer a constitutional claim against Detective Lewis.

An arrest and subsequent imprisonment violate the Fourth Amendment if made without probable cause.[62] "Thus, the proper inquiry in a [s]ection 1983 claim based on false arrest is whether the arresting officers had probable cause to believe the person arrested had committed the offense."[63] But "'[a] defendant in a civil rights action must have personal involvement in the alleged wrongs' to be liable."[64]

Mrs. Lewis does not plead facts allowing us to plausibly infer Detective Lewis falsely arrested or unreasonably seized her. Mrs. Lewis again does not plead facts allowing us to plausibly

infer Detective Lewis arrested Mrs. Lewis for the theft of the Mustang. Mrs. Lewis also does not allege Detective Lewis's involvement in the arrest. She alleges facts allowing us to plausibly infer the Philadelphia Police arrested her.[65] She alleges Detective Lewis provided investigators with materials leading to the arrest.[66] But the undisputed allegations based on the integral request for investigation confirm Detective Lewis asked the District Attorney who should investigate his February 2023 discovery of forged title documents representing he signed documents transferring title to Mrs. Lewis and someone paid him consideration. He told the District Attorney these recitals are false. He did not ask anyone to arrest Mrs. Lewis or her then-boyfriend. He requested an investigation. Mrs. Lewis admits she thought she could change the title as an administrative matter because of her understanding of an interim property settlement agreement as part of their separation. She admits a role in transferring title. She does not address the alleged forgeries of Detective Lewis's signature. Detective Lewis's description of Mrs. Lewis as his "ex-wife" rather than "separated" wife is immaterial to this request for investigation.

We must dismiss Mrs. Lewis's Fourth Amendment claim as we lack a pleaded fact allowing us to plausibly infer Detective Lewis's personal involvement in the unreasonable seizure and arrest.[67]

### C. We dismiss Mrs. Lewis's claim for malicious prosecution under federal law against Detective Lewis.

Mrs. Lewis seeks damages under a federal malicious prosecution claim against Detective Lewis.[68] She claims Detective Lewis's actions and knowledge of the criminal referral system led to her arrest despite no probable cause.[69] Detective Lewis moves to dismiss arguing Mrs. Lewis cannot bring a malicious prosecution claim against him unless she can plead facts allowing us to plausibly infer Detective Lewis misrepresented material facts, omitted information, or interfered with the prosecutor's ability to exercise independent judgment.[70] Detective Lewis further argues

Mrs. Lewis does not allege facts allowing us to plausibly infer he supplied materially false information or procured the prosecution's investigation.[71] Mrs. Lewis replies Detective Lewis misrepresented the material fact of their marital status when he described her as his "ex-wife" in the request for investigation based on his discovery of allegedly forged signatures.[72] We agree with Detective Lewis.

To prevail on a Fourth Amendment malicious prosecution claim against Detective Lewis, Mrs. Lewis must plead facts allowing us to plausibly infer: "(1) [Detective Lewis] initiated a criminal proceeding; (2) the criminal proceeding ended in [her] favor; (3) [Detective Lewis] initiated the proceeding without probable cause; (4) [Detective Lewis] acted maliciously or for a purpose other than bringing [Mrs. Lewis] to justice; and (5) [Mrs. Lewis] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[73] Detective Lewis may be liable for malicious prosecution if he "conceal[ed] or misrepresent[ed] material facts to the prosecutor."[74] This liability includes "mak[ing] false or misleading reports to the prosecutor, omit[ting] material information from the reports, or otherwise interfer[ing] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute."[75]

Mrs. Lewis cannot proceed with a malicious prosecution claim against Detective Lewis because she does not plead facts allowing us to plausibly infer Detective Lewis initiated the criminal proceeding against her without probable cause. Mrs. Lewis pleads Detective Lewis misrepresented their marital status in his request for investigation concerning the Mustang.[76] She concludes this misrepresentation was material because it somehow caused law enforcement and prosecutors to treat the Mustang as former spouse property instead of marital property "subject to a valid family court agreement."[77] But her allegations ignore her admitted cooperation in the investigation. She pleads she "promptly and truthfully disclosed all material facts to law

enforcement and prosecutors" as soon as she learned of her then-boyfriend's actions.[78] Taking Mrs. Lewis's allegations as true, she disclosed her true marital status to law enforcement and prosecutors. She pleads prosecutors and others ignored her disclosure.[79] But we cannot find the "ex-wife" description is material if the prosecutor knows of its falsity or at least knows of challenges to its accuracy and then proceeds to prosecute in their discretion. Mrs. Lewis does not plead facts allowing us to plausibly infer the false report of their marital status is material even after she fully cooperated.

And she cannot credibly allege facts after two attempts allowing us to plausibly infer Detective Lewis initiated the criminal proceeding without probable cause or interfered with law enforcement and prosecutors' ability to exercise independent judgment in deciding whether to prosecute. Detective Lewis described his view about his forged signatures and recital of money paid to him. He asked who should investigate. He did not ask anyone to investigate Mrs. Lewis specifically. The Attorney General moved forward with the prosecution even after Mrs. Lewis disclosed Detective Lewis's misrepresentation of their marital status as an ex-wife rather than a "separated but legally married" spouse. They could not have done so based on Detective Lewis's misrepresentation because Mrs. Lewis subsequently corrected the misrepresentation. They allegedly ignored her correction. But they knew of her dispute with Detective Lewis's statement and still prosecuted. She does not, and cannot, allege Detective Lewis duped the prosecutors when she corrected issues on the title. Her pleaded facts do not allow us to plausibly infer a basis for a malicious prosecution claim against Detective Lewis.

We dismiss Mrs. Lewis's federal civil rights claim against Detective Lewis for malicious prosecution. He did not prosecute her nor did he provide a materially false statement leading to her prosecution.

**D. We dismiss Mrs. Lewis's federal conspiracy claims against Detective Lewis.**

Mrs. Lewis claims Detective Lewis acted in concert with the District Attorney and the Office of Attorney General to wrongfully prosecute her rather than acting in good faith.[80] Detective Lewis moves to dismiss arguing Mrs. Lewis does not identify with whom Detective Lewis conspired against her, what the parties communicated, or what overt act Detective Lewis took to further the conspiracy.[81] Mrs. Lewis counters Detective Lewis and the parties acted in bad faith.[82] We are not aware of a good faith requirement to the conspiracy claim. We agree with Detective Lewis.

To state a claim for a conspiracy to violate civil rights, Mrs. Lewis must allege facts allowing us to plausibly infer: 1) the existence of a conspiracy involving state action; and 2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.[83] But a civil rights conspiracy claim cannot survive without an underlying federal constitutional violation.[84]

Mrs. Lewis does not sufficiently plead facts allowing us to plausibly infer a standalone constitutional violation under federal civil rights law because we dismissed her Fourth Amendment claims. We dismiss Mrs. Lewis's civil rights conspiracy claim under section 1983.

**E. We decline to exercise supplemental jurisdiction over Mrs. Lewis's remaining state law claims against Detective Lewis, the City, and the District Attorney.**

Mrs. Lewis does not plead facts allowing us to plausibly infer a federal claim. So we next turn to her Pennsylvania state law claims. Mrs. Lewis claims intentional infliction of emotional distress against Detective Lewis. She also claims malicious prosecution against Detective Lewis, the City, and the District Attorney. But we lack subject matter jurisdiction over her Pennsylvania state law claims unless we exercise our discretion to retain supplemental jurisdiction.

We may consider our supplemental jurisdiction sua sponte.[85] Congress allows us to exercise supplemental jurisdiction over state law claims where the state law claims "form part of the same case or controversy under Article III[.]"[86] But Congress empowers us to decline exercising supplemental jurisdiction over state law claims if we dismissed "all claims over which [we] ha[ve] original jurisdiction."[87] And we "generally decline to exercise supplemental jurisdiction over state law claims" after dismissing federal claims early in litigation.[88]

We decline to exercise supplemental jurisdiction absent a federal question and dismiss Mrs. Lewis's Pennsylvania state law claims without prejudice for her to timely pursue remedies in state court.

## III. Conclusion

We grant Detective Lewis's, the City's, and the District Attorney's Motions to dismiss Mrs. Lewis's amended Complaint. We dismiss Mrs. Lewis's federal claims against the City, District Attorney, and Detective Lewis with prejudice after two attempts at pleading claims. She cannot credibly plead facts consistent with Rule 11 allowing us to plausibly infer the City and District Attorney are liable for constitutional violations under municipal liability theories. She cannot credibly plead facts consistent with Rule 11 allowing us to plausibly infer Detective Lewis's request for investigation violated her constitutional rights based on his view of forged signatures on title documents and asking the District Attorney who should investigate his concern.

We cannot deprive a detective of the right to seek an investigation when they believe someone forged their signature on documents relating to the detective's personal property. Mrs. Lewis pleads no facts in support of some overarching conspiracy behind the scenes through which the Attorney General prosecuted her for stealing the Mustang because Detective Lewis described her as an "ex-wife" rather than a "separated" wife when asking the District Attorney who should

investigate forged documents relating to a Mustang car given to him when he lived in the marital home with Mrs. Lewis.

We have no basis to proceed on federal claims. We decline to exercise supplemental jurisdiction over Mrs. Lewis's Pennsylvania state law claims. We dismiss Mrs. Lewis's Pennsylvania state law claims against the City, District Attorney, and Detective Lewis without prejudice for her to timely pursue remedies in state court.

---

[1] ECF 31 ¶ 6.

[2] ECF 34-2 at 2. We may consider the facts detailed in Detective Lewis's "request for investigation" as integral to Mrs. Lewis's claims which are derived to the request and an integral part of her allegations. Detective Lewis attaches the Request as Exhibit 1 to his Motion to dismiss Mrs. Lewis's Complaint. *See* ECF 34-2. Our Court of Appeals instructs we may consider a document outside the complaint on a motion to dismiss when the complainant's claims rely on the document and no party disputes its authenticity. *See Bridges v. Torres*, 809 F. App'x 69, 71 (3d Cir. 2020) (citing *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)) ("'[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment'…Courts may also consider an 'undisputedly authentic document' attached 'as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'")); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[W]hat is critical is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited. Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.") (citations and quotations omitted).

[3] ECF 34-2 at 2.

[4] *Id.*

[5] ECF 31 ¶ 6.

[6] *Id.* ¶¶ 7–8.

[7] *Id.* ¶ 8.

[8] ECF 34-2 at 2.

[9] *Id.*

[10] *Id.*

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] ECF 31 ¶ 10.

[15] *Id.* ¶¶ 12–21.

[16] *Id.* ¶¶ 7–8.

[17] *Id.* ¶¶ 12, 18–19.

[18] *Id.* ¶ 18.

[19] *Id.* ¶ 8.

[20] *Id.* ¶ 22.

[21] *Id.* ¶ 23.

[22] *Id.*

[23] ECF 1 ¶ 9.

[24] *Id.*

[25] ECF 27.

[26] *Id.*

[27] *Id.*

[28] ECF 31.

[29] *Id.* ¶¶ 24–31, 34–39.

[30] *Id.* ¶¶ 32–33.

[31] *Id.* ¶¶ 40–48.

[32] ECFs 34, 35, 38. Mrs. Lewis must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

Our Court of Appeals further directs us to construe a pro se litigant's pleadings "liberally" and "hold [her] to 'less stringent standards than formal pleadings drafted by lawyers.'" *Freeman v. Lincalis*, 158 F.4th 166, 175 (3d Cir. 2025) (quoting *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024)). We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). But "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). They "must still ultimately 'abide by the same rules that apply to all other litigants.'" *Freeman*, 158 F.4th at 175 (quoting *Mala*, 704 F.3d at 245).

[33] ECF 34-1 at 2.

[34] ECF 36 at 1.

[35] ECF 35 at 5–9. Mrs. Lewis did not respond to the City's Motion.

[36] ECF 38 at 5–11.

[37] ECF 39 at 1–3.

[38] ECF 31 ¶¶ 32–33.

[39] *Id.* ¶¶ 24–31.

[40] *Id.*

[41] *Id.* ¶¶ 34–36.

[42] ECF 35 at 5; ECF 38 at 5–6.

[43] *Id.*

[44] ECF 39 at 2.

[45] 42 U.S.C. § 1983.

[46] *E.g.*, *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005); *Rush v. City of Phila.*, No. 19-932, 2021 WL 308229, at *4 (E.D. Pa. Jan. 29, 2021), *aff'd*, 78 F.4th 610 (3d Cir. 2023); *Burgos v. City of Phila.*, 439 F. Supp. 3d 470, 484 (E.D. Pa. 2020).

[47] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–95 (1978). Female employees of the Department of Social Services and the Board of Education of New York City claimed the Board and Department had as a matter of policy compelled pregnant employees to take unpaid leaves of absence before medical reasons required such leaves. The Supreme Court held a local government is not liable under Section 1983 for an injury inflicted solely by its employees or agents. It is liable only when "execution of a government's policy or custom" inflicts the injury.

[48] *Rush*, 2021 WL 308229, at *4, *aff'd*, 78 F.4th 610 (3d Cir. 2023); *McGreevy*, 413 F.3d at 367 (citing *Monell*, 436 U.S. at 691, 694).

[49] *Howard v. Wellpath, LLC*, No. 22-3241, 2023 WL 2226797, at *3 (E.D. Pa. Feb. 24, 2023) (citing *Monell*, 436 U.S. at 694).

[50] *Burgos*, 439 F. Supp. 3d at 484–85.

[51] *Id.* at 485 (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)).

[52] *Id.*

[53] *Id.*

[54] *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006); *Burgos*, 439 F. Supp. 3d at 484–85; *Natale*, 318 F.3d at 584.

[55] ECF 31 ¶ 33.

[56] *Id.*

[57] *Id.* ¶ 24.

[58] *Id.* ¶ 26.

[59] ECF 34-1 at 6.

[60] ECF 36 at 1–2.

[61] *Id.*

[62] *Mitchell v. Robinson*, No. 24-5687, 2025 WL 1047714, at *5 (E.D. Pa. Apr. 8, 2025); *Maiale v. Youse*, No. 3-5450, 2004 WL 1925004, at *12 (E.D. Pa. Aug. 24, 2004) ("[f]alse arrest and false imprisonment are thus nearly identical claims, and are generally analyzed together") (citing *Olender v. Twp. of Bensalem*, 32 F.Supp.2d 775, 791 (E.D. Pa. 1999)); *Groman*, 47 F.3d at 636 ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures . . . [i]f the jury found in plaintiffs' favor on the false arrest claim, it could also find that [the plaintiff] suffered a violation of his constitutional rights by virtue of his detention pursuant to that arrest").

[63] *Irick v. City of Phila.*, No. 7-13, 2008 WL 2120171, at *8 (E.D. Pa. May 20, 2008) (citation omitted).

[64] *Croom v. City of Phila.*, No. 22-3817, 2023 WL 6626130, at *2 (E.D. Pa. Oct. 11, 2023) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

[65] ECF 31 ¶ 22.

[66] *Id.* ¶ 26.

[67] *Croom v. City of Phila.*, No. 22-3817, 2023 WL 6626130, at *5 (E.D. Pa. Oct. 11, 2023) (quoting *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020)).

[68] ECF 31 ¶¶ 28–31.

[69] *Id.* ¶ 29.

[70] ECF 34-1 at 6.

[71] ECF 34-1 at 7–9.

[72] ECF 36 at 1–2.

[73] *Hicks v. City of Phila.*, 783 F. Supp. 3d 834, 856 (E.D. Pa. 2025) (quoting *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)).

[74] *Stief v. Robeson Twp.*, No. 20-6272, 2021 WL 5112249, at *5 (E.D. Pa. Nov. 3, 2021).

[75] *Id.* (quoting *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018)).

[76] ECF 31 ¶ 15.

[77] *Id.* ¶¶ 16–17.

[78] *Id.* ¶ 19.

[79] *Id.* ¶ 30.

[80] *Id.* ¶ 35.

---

[81] ECF 34-1 at 9.

[82] ECF 36 at 2.

[83] *Frompovicz v. Hissner*, 434 F. Supp. 3d 269, 283 (E.D. Pa. 2020), *aff'd* 843 F. App'x 427 (3d Cir. 2021).

[84] *Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.").

[85] *See Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016).

[86] 28 U.S.C. § 1367(a).

[87] *Id.* § 1367(c)(3); *see Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017) ("A federal court may decline to exercise supplemental jurisdiction over state law claims when it dismisses all claims over which it has original jurisdiction.").

[88] *Medley v. Atlantic Exposition Svcs., Inc.*, 550 F. Supp. 3d 170, 203 (D.N.J. 2021).